Fred Smith Co. v. Smith, 2025 NCBC 70.

STATE OF NORTH CAROLINA

JOHNSTON COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
25CV004428-500

FRED SMITH COMPANY, a North
Carolina Corporation; FSC I, LLC, a
North Carolina Limited Liability
Company; FSC RANCH, LLC, a North
Carolina Limited Liability Company;
FSC RANCH II, LLC, a North Carolina
Limited Liability Company; WALTON
FARMS, LLC, a North Carolina
Limited Liability Company; RWAC
RENTAL, LLC, a North Carolina
Limited Liability Company; RWAC
RENTAL III, LLC, a North Carolina
Limited Liability Company; RWAC
RENTAL IV, LLC, a North Carolina
Limited Liability Company; RWAC
RENTAL VI, LLC, a North Carolina
Limited Liability Company; RWAC
RENTAL VII, LLC, a North Carolina
Limited Liability Company; MINGO
CREEK INVESTMENTS II, LLC, a
North Carolina Limited Liability
Company; MINGO CREEK
INVESTMENTS III, LLC, a North
Carolina Limited Liability Company;
BLACK & GOLD INVESTMENTS II,
LLC, a North Carolina Limited
Liability Company; LIONS SPRING
HOUSING ASSOCIATES, LLC, a
North Carolina Limited Liability
Company; BLACKWOLF RUN III-2,
LLC, a North Carolina Limited
Liability Company; RIVERWOOD
RANCH TOWNHOMES, LLC, a North
Carolina Limited Liability Company;
LIONSGATE TOWNHOMES, LLC, a
North Carolina Limited Liability
Company; SMITH-EDWARDS, LLC, a
North Carolina Limited Liability
Company; RGC 2, LLC, a North
Carolina Limited Liability Company;
SANS SOUCI FARM, LLC, a North
Carolina Limited Liability Company,

Plaintiffs,

v.

VIRGINIA REID SMITH,
Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT**

**THIS MATTER** is before the Court on Defendant Virginia Reid Smith's Motion to Dismiss the Complaint ("Motion to Dismiss" or the "Motion," ECF No. 19).

Having considered the Motion, the parties' briefs and other submissions, the arguments of counsel, the applicable law, and all other appropriate matters of record, the Court concludes that the Motion to Dismiss should be **GRANTED** for the reasons set forth below.

> *K&L Gates, LLP, by A. Lee Hogewood, III, Robert B. Womble, Daniel Drew McClurg, and Derek Sutton, for Plaintiffs Fred Smith Company; FSC I, LLC; FSC Ranch, LLC; FSC Ranch II, LLC; Walton Farms, LLC; RWAC Rental, LLC; RWAC Rental III, LLC; RWAC Rental IV, LLC; RWAC Rental VI, LLC; RWAC Rental VII, LLC; Mingo Creek Investments III, LLC; Black & Gold Investments II, LLC; Lions Spring Housing Associates, LLC; Blackwolf Run III-2, LLC; Riverwood Ranch Townhomes, LLC; Lionsgate Townhomes, LLC; Smith-Edwards, LLC; RGC 2, LLC; and Sans Souci Farm, LLC.*

> *McGuireWoods LLP, by Ryan Park, for Defendant Virginia Reid Smith.*

Davis, Judge.

## INTRODUCTION

1. In this case, the Court reaffirms the well-established rule in North Carolina that a Superior Court judge lacks the authority to interfere with proceedings in an equitable distribution action pending in District Court.

## FACTUAL AND PROCEDURAL BACKGROUND

2. "The Court does not make findings of fact on the Motions. Rather, the Court recites the allegations asserted in the Complaint that are relevant to the Court's determination of the Motions." *Pridgen v. Carlson*, 2025 NCBC LEXIS 89, at *2 (N.C. Super. Ct. July 25, 2025).

3. Defendant Virginia Reid Smith ("Mrs. Smith") is a resident of New Hanover County, North Carolina. (Compl., ECF No. 3, ¶ 105.)

4. Mrs. Smith married non-party Fred J. Smith, Jr. ("Mr. Smith") on 9 November 1980. (Compl. ¶ 112.) Mr. and Mrs. Smith separated on or about 14 July 2024. (Compl. ¶ 113.)

5. Following their separation, Mrs. Smith initiated a lawsuit against Mr. Smith in New Hanover County District Court seeking an equitable distribution of the marital estate (the "ED Action") on 18 July 2024. (Compl. ¶ 114; *see also Smith v. Smith*, New Hanover Cnty. Dist. Ct. File No. 24CVD002733-640.)

6. In the ED Action, Mrs. Smith has alleged that since their separation Mr. Smith has taken certain actions with respect to various businesses he owns or otherwise controls that have significantly diminished the value of the marital estate. (*See generally* Compl. Ex. A.)

7. On 23 June 2025, Mrs. Smith filed a motion for preliminary injunction (the "PI Motion") in the ED Action seeking, among other things, to enjoin Mr. Smith from "disposing, transferring, wasting, hiding, converting, selling, pledging, assigning, or in any manner alienating any marital or divisible assets[.]" (Compl. ¶ 129; Compl. Ex. A at 1.)

8. The PI Motion further stated the following:

[Mr. Smith] should be ordered to notify [Mrs. Smith] in writing of any proposed sale of a business entity, assignment of any membership interest, or any proposed refinance of any debt associated with a business entity, asset, or interest as soon as he learns of any prospective sale, assignment, or refinance. [Mr. Smith] should be ordered not to

proceed with any such transaction without [Mrs. Smith's] written consent or entry of any order of the Court permitting the same.

[Mr. Smith] should be enjoined from authorizing or proceeding forward with any transactions in excess of one hundred thousand dollars whether individually or associated with any business entity in which he has management control without [Mrs. Smith's] written consent or entry of a Court order.

[Mr. Smith] should be ordered to obtain [Mrs. Smith's] written consent or entry of a Court order prior to further encumbering any stock or other assets in [Mr. Smith's] individual name or associated with any business entity in which he has management control.

[Mr. Smith] should be ordered to provide [Mrs. Smith] with all documents relating to potential sales or new loan agreements/refinances in a timely manner, including closing statements, loan applications, and sales contracts. [Mr. Smith] should be ordered not to proceed with the transaction without [Mrs. Smith's] written consent or entry of any order of the Court permitting the same.

(Compl. Ex. A ¶¶ 14–17.)

9. The Plaintiffs in the present lawsuit consist of twenty companies who are largely controlled—either directly or indirectly—by Mr. Smith. (Compl. ¶¶ 9–100.)

10. Plaintiff Fred Smith Company ("FSC") is a North Carolina corporation that maintains its principal place of business in Johnston County, North Carolina. (Compl. ¶¶ 2–3.) Mr. Smith is the sole shareholder and current President of FSC. (Compl. ¶¶ 5–6.)

11. Plaintiffs FSC I, LLC; FSC Ranch, LLC; FSC Ranch II, LLC; Walton Farms, LLC; RWAC Rental, LLC; RWAC Rental III, LLC; RWAC Rental IV, LLC; RWAC Rental VI, LLC; RWAC Rental VII, LLC; Mingo Creek Investments III, LLC; Black & Gold Investments II, LLC; Lions Spring Housing Associates, LLC; Blackwolf

Run III-2, LLC; Riverwood Ranch Townhomes, LLC; Lionsgate Townhomes, LLC; Smith-Edwards, LLC; RGC 2, LLC; and Sans Souci Farm, LLC (together with FSC, "Plaintiffs") are limited liability companies organized under North Carolina law that maintain their principal places of business in Johnston County, North Carolina. (Compl. ¶¶ 9–10, 14–15, 19–20, 24–25, 29–30, 34–35, 39–40, 44–45, 49–50, 54–55, 59–60, 64–65, 69–70, 74–75, 79–80, 84–85, 89–90, 94–95, 99–100.)

12. The following is a description of the ownership and management of each of these entities:

> a. FSC is the sole owner and manager of FSC I, LLC. (Compl. ¶¶ 12–13.)
>
> b. Mr. Smith and one of his children are the owners of FSC Ranch, LLC, and Mr. Smith is the manager. (Compl. ¶¶ 17–18.)
>
> c. Mr. Smith is the sole owner and manager of FSC Ranch II, LLC. (Compl. ¶¶ 22–23.)
>
> d. Mr. Smith and FSC are the owners of Walton Farms, LLC, and FSC is the manager. (Compl. ¶¶ 27–28.)
>
> e. Mr. Smith is the sole owner of RWAC Rental, LLC, and FSC is the manager. (Compl. ¶¶ 32–33.)
>
> f. Mr. Smith and FSC are the owners of RWAC Rental III, LLC, and FSC is the manager. (Compl. ¶¶ 37–38.)
>
> g. Mr. Smith and FSC are the owners of RWAC Rental IV, LLC, and FSC is the manager. (Compl. ¶¶ 42–43.)

h.      Mr. Smith and FSC are the owners of RWAC Rental VI, LLC, and FSC is the manager.  (Compl. ¶¶ 47–48.)

i.      Mr. Smith and FSC are the owners of RWAC Rental VII, LLC, and FSC is the manager.  (Compl. ¶¶ 52–53.)

j.      Mr. Smith, one of his children, and FSC are the owners of Mingo Creek Investments II, LLC, and FSC is the manager.  (Compl. ¶¶ 57–58.)

k.      Mr. Smith and FSC are the owners of Mingo Creek Investments III, LLC, and FSC is the manager.  (Compl. ¶¶ 62–63.)

l.      Mr. Smith is the sole owner and manager of Black & Gold Investments II, LLC.  (Compl. ¶¶ 67–68.)

m.      FSC is the sole owner and manager of Lions Spring Housing Associates, LLC.  (Compl. ¶¶ 72–73.)

n.      Mr. Smith, one of his children, and FSC are the owners of Blackwolf Run III-2, LLC, and FSC is the manager.  (Compl. ¶¶ 77–78.)

o.      Mr. Smith and one of his children are the owners of Riverwood Ranch Townhomes, LLC, and FSC is the manager.  (Compl. ¶¶ 82–83.)

p.      Mr. Smith, one of his children, and FSC are the owners of Lionsgate Townhomes, LLC, and Mr. Smith is the manager. (Compl. ¶¶ 77–78.)

q.   FSC, along with individuals and entities associated with non-party Randy L. Edwards, are the owners of Smith-Edwards, LLC. (Compl. ¶ 92.) Mr. Smith and Edwards are the managers. (Compl. ¶ 93.)

r.   Mr. Smith is the sole owner and manager of RGC 2, LLC. (Compl. ¶¶ 97–98.)

s.   Mr. Smith is the sole owner and manager of Sans Souci Farm, LLC. (Compl. ¶¶ 102–103.)

13.   FSC operates as an "enterprise shared services company" and provides document management, accounting, cash management, leadership, and governance function services to many of the other Plaintiffs. (Compl. ¶ 4.)

14.   Plaintiffs, collectively, are involved in multiple lines of business, including the ownership, management, and operation of golf and athletic clubs; agriculture; farming; ranching; forestry; and the ownership, development, and rental of residential and commercial real estate. (Compl. ¶¶ 11, 16, 21, 26, 31, 36, 41, 46, 51, 56, 61, 66, 71, 76, 81, 86, 91, 96, 101–102.) A substantial portion of Plaintiffs' day-to-day business involves the financing, purchase, and sale of real property and cattle. (Compl. ¶ 153.)

15.   To facilitate Plaintiffs' business operations, Plaintiffs have entered into a wide range of complex secured and unsecured lending relationships with state-chartered, federally chartered, and other financial lending institutions. (Compl. ¶¶ 119, 155, 173.)

16.     Collectively, Plaintiffs are parties to lending agreements valued at more than $120 million.  (Compl. ¶ 155.)

17.     Plaintiffs allege that nearly all of their existing loan agreements are subject to fixed interest rates that are significantly lower than current market rates and contain similar default provisions under which the lender may accelerate payment of the loan.  (Compl. ¶¶ 174–175, 182, 202, 206, 248.)

18.     After learning of Mrs. Smith's PI Motion in the ED Action, Plaintiffs formed a belief that the relief sought in the PI Motion implicated certain default provisions contained in their lending agreements, thereby creating the possibility that they would face serious financial consequences if the PI Motion was ultimately granted.  (Compl. ¶¶ 183, 207.)  Plaintiffs also concluded that they had an obligation to inform their lenders of the pendency of the PI Motion despite their fear that this information would trigger—or at least risk triggering—a default event.  (Compl. ¶¶ 202, 248; *see also* Compl. ¶¶ 186, 216.)

19.     Accordingly, Plaintiffs informed their lenders of the existence of the PI Motion.  (Compl. ¶¶ 201, 249.)

20.     Plaintiffs' counsel also engaged in various written communications with Mrs. Smith's counsel in the ED Action to explain Plaintiffs' concerns regarding the risk of harm the PI Motion posed to them and to request that Mrs. Smith withdraw the PI Motion.  (Compl. ¶¶ 251, 253, 256; *see generally* Compl. Ex. B.)

21. In a 9 July 2025 letter to Plaintiffs' counsel—and in a subsequent 21 July 2025 email—Mrs. Smith's attorney in the ED Action stated that Mrs. Smith would not be withdrawing the PI Motion. (*See* Compl. Ex. B.)

22. Shortly thereafter, on 25 July 2025, Plaintiffs initiated the present lawsuit by filing a Complaint in Johnston County Superior Court seeking declaratory, injunctive, and monetary relief against Mrs. Smith. (ECF No. 3.) In their first three claims, Plaintiffs seek a combination of declaratory and injunctive relief aimed at barring Mrs. Smith from making any arguments in connection with her PI Motion in the ED Action that would affect Plaintiffs. In their fourth and fifth claims for relief, Plaintiffs assert claims against Mrs. Smith for tortious interference with contract and conversion, respectively.

23. Currently, Plaintiffs are not parties to the ED Action. Rather, Mr. Smith and Mrs. Smith remain the sole parties to that proceeding. (Compl. ¶ 116; *see also* Compl. Ex. B, at 1.) However, after the present lawsuit was filed, Mrs. Smith filed a motion in the ED Action seeking to join Plaintiffs as parties. (ECF No. 20.6.) That motion is currently pending before the District Court.

24. On 29 July 2025, this matter was designated as a mandatory complex business case and assigned to the undersigned. (ECF Nos. 1–2.)

25. That same day, Plaintiffs filed a Motion for Preliminary Injunction in this case. (ECF No. 6.)[1]

---

[1] On 28 August 2025, Plaintiffs filed an Amended Motion for Preliminary Injunction (ECF No. 28), which was followed by a Second Amended Motion for Preliminary Injunction on 20 October 2025. (ECF No. 36.)

26.     On 28 August 2025, Mrs. Smith filed the present Motion seeking the dismissal of this action pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure.  (ECF No. 23.)

27.     The Motion to Dismiss came on for a hearing before the Court on 28 October 2025, at which Plaintiffs and Mrs. Smith were each represented by counsel.

28.     The Motion to Dismiss is now ripe for resolution.

## LEGAL STANDARD

29.     A motion brought under Rule 12(b)(1) challenges a court's jurisdiction over the subject matter of the claimant's claims.  N.C. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest," *In re T.R.P.*, 360 N.C. 588, 590 (2006), and has been defined as "a court's legal authority to adjudicate the kind of claim alleged."  *In re McClatchy Co., LLC*, 386 N.C. 77, 85 (2024) (cleaned up).  "[T]he proceedings of a court without jurisdiction of the subject matter are a nullity."  *Burgess v. Gibbs*, 262 N.C. 462, 465 (1964) (cleaned up).

30.     In determining the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings.  *Emory v. Jackson Chapel First Missionary Baptist Church*, 165 N.C. App. 489, 491 (2004).  However, "if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff."  *Munger v. State*, 202 N.C. App. 404, 410 (2010) (quoting *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603 (2001)).

31.     In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pled factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is not, however, required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't Health and Hum. Servs., Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

32.     Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

33.     Our Supreme Court has observed that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face

reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (cleaned up).

## ANALYSIS

34. In the Motion to Dismiss, Mrs. Smith seeks dismissal of this action in its entirety pursuant to Rules 12(b)(1) and (6).

35. With respect to her Rule 12(b)(1) argument, Mrs. Smith asserts that this Court lacks subject matter jurisdiction over Plaintiffs' claims because the District Court in the ED Action has exclusive jurisdiction over all matters related to equitable distribution and that the adjudication of Plaintiffs' claims would require this Court to become involved in the determination of what is—and is not—marital property.

36. With regard to Plaintiffs' claims for tortious interference and conversion, Mrs. Smith asserts that those claims are also subject to dismissal pursuant to Rule 12(b)(6) because Plaintiffs have failed to allege that Mrs. Smith has taken any action beyond filing the PI Motion, which cannot by itself give rise to liability grounded in tort.

37. The Court will address each of Mrs. Smith's arguments in turn.

## I.   Rule 12(b)(1)

38.   As noted above, subject matter jurisdiction refers to the "legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." *Catawba Cnty. ex rel. Rackley v. Loggins*, 370 N.C. 83, 88 (2017) (cleaned up).  It is "a threshold requirement for a court to hear and adjudicate a controversy brought before it," *In re M.B.*, 179 N.C. App. 572, 574 (2006) (cleaned up), which "cannot be conferred by consent or waiver [or] . . . create[d] [] where it does not already exist," *Burgess v. Burgess*, 205 N.C. App. 325, 327–28 (2010) (cleaned up).

39.   Chapter 7A of the North Carolina General Statutes governs the jurisdiction and powers of North Carolina's trial courts, and N.C.G.S. § 7A-244 states as follows with respect to the subject matter jurisdiction of our District Courts:

> The district court division is the proper division without regard to the amount in controversy, for the trial of civil actions and proceedings for annulment, divorce, **equitable distribution of property**, alimony, child support, child custody and the enforcement of separation or property settlement agreements between spouses, or recovery for the breach thereof.

N.C.G.S. § 7A-244 (emphasis added).

40.   "Equitable distribution is the process by which a court divides property belonging to a married couple based upon a variety of statutory factors." *Smith v. Rodgers*, 263 N.C. App. 662, 668 (2019) (citing N.C.G.S. § 50-20(c)).

41.   It is well settled that District Courts possess exclusive authority over equitable distribution proceedings. *See Watson v. Joyner-Watson*, 263 N.C. App. 393, 395 (2018) ("The district court exercises subject matter jurisdiction over civil actions and proceedings for . . . equitable distribution of property." (cleaned up)); *see also*

*Guiliano v. Strickland*, 2024 NCBC LEXIS 95, at \*6 (N.C. Super. Ct. July 16, 2024) ("The District Court division has exclusive jurisdiction over all equitable distribution claims.").

42. Plaintiffs argue that this Court nevertheless possesses subject matter jurisdiction over their claims in this case because Plaintiffs are separate and legally distinct entities from Mr. Smith and—as non-parties to the ED Action—are entitled to bring this case in Superior Court to protect their interests.

43. Mrs. Smith, conversely, contends that Plaintiffs are seeking an end run around the District Court's exclusive jurisdiction over the ED Action by asking this Court to improperly interfere with her pending PI Motion in that proceeding.

44. In addressing the parties' respective contentions under Rule 12(b)(1), the Court deems it appropriate to analyze Plaintiffs' declaratory and injunctive claims separately from their claims for monetary damages.

**A.      Claims for Declaratory and Injunctive Relief**

45. The District Court's exclusive jurisdiction over equitable distribution actions logically extends to all motions made in the course of those proceedings. *See Garrison v. Garrison*, 90 N.C. App. 670, 672 (1988) (holding that "[t]he district court did not lose jurisdiction to equitably distribute the marital property" when a "special proceeding seeking partition of the marital property was filed in the office of the clerk of superior court"); *see also Tripp v. Tripp*, 2011 N.C. App. LEXIS 2168, at \*4 (N.C. Ct. App. Oct. 4, 2011) (unpublished) (noting that "[o]nce a party invokes the

jurisdiction of the District Court for equitable distribution, the District Court has exclusive jurisdiction over the property" at issue (cleaned up)).

46. Plaintiffs' claims for declaratory and injunctive relief are—on their face—inextricably intertwined with the ED Action. Specifically, with respect to these three claims, the Complaint states in pertinent part as follows:

> Each of the Plaintiff Entities is a separate and distinct entity, properly organized or formed under the NC BCA and the NC LLCA (as applicable).
>
> Based on the substantial harm already imposed by [Mrs. Smith] on Plaintiff Entities and the imminent, additional harm that would result from [Mrs. Smith's] pursuit of [Mrs. Smith's] PI Motion and [Mrs. Smith's] threatened TRO Motion, Plaintiff Entities' allegations present an actual, genuine, existing and justiciable controversy.
>
> The Plaintiff Entities request a declaratory judgment that each of and every one of the Plaintiff Entities are separate and distinct entities from one another, from Mr. Smith, and from [Mrs. Smith] and that as such, none of the Plaintiff Entities may be combined, consolidated, merged, or pierced, in whole or in part, through the grant of injunctive or other relief in the ED Proceeding.
>
> . . .
>
> The Plaintiff Entities request a declaratory judgment that each of and every one of the Plaintiff Entities is entitled to continue as separate and distinct entities from one another, from Mr. Smith, and from [Mrs. Smith], and that as such, none of the Plaintiff Entities may be inhibited, enjoined, limited, or otherwise deprived of their ongoing autonomous governance and management, in whole or in part, through the grant of injunctive or other relief in the ED Proceeding.
>
> . . .
>
> [Mrs. Smith's] PI Motion threatens the independence and operations of each of the Plaintiff Entities.
>
> [Mrs. Smith's] PI Motion (even pending) requires disclosure and potential default by the Plaintiff Entities under and pursuant to the numerous lending relationships described above.

. . .

> Plaintiff Entities ask this Court to enjoin [Mrs. Smith] from any and all actions, including the filing of motions in the ED Proceeding that (a) seek to impair the independent and separate existence of any of the Plaintiff Entities; (b) limit the autonomous governance and operations of any of the Plaintiff Entities; [and] (c) are in derogation of or challenge the declarations requested in the First and Second Claims for Relief set forth above.

> Plaintiff Entities ask this Court for a mandatory injunction directing and requiring [Mrs. Smith] to remove all references and requests set forth in [Mrs. Smith's] PI Motion that seek the imposition of judicially sanctioned limitations upon or directions or control of the actions, duties, obligations or disclosures of any of the Plaintiff Entities in any respect.

(Compl. ¶¶ 273–275, 279, 281–282, 284–285.)

47.     Not only do these allegations demonstrate that the source of Plaintiffs' alleged harm is Mrs. Smith's PI Motion in the ED Action, but they also make abundantly clear that Plaintiffs' requested remedy is that this Court make rulings that limit Mrs. Smith's ability to argue her PI Motion before the District Court in the manner she sees fit to do so.

48.     Thus, each of Plaintiffs' three claims for declaratory and injunctive relief are expressly based on a motion—and related proceedings—that are currently pending before the District Court in the ED Action.

49.     The Court concludes that it lacks subject matter jurisdiction over these claims for at least four reasons.

50.     First, Plaintiffs candidly admit that they have been unable to find any North Carolina case law supporting the proposition that a judge in one lawsuit has the authority to prevent a litigant from making an argument in a separately pending

second lawsuit before a different judge in connection with a motion that the party has filed in the second lawsuit.

51.     Indeed, it is axiomatic that if a litigant objects to the propriety of a motion that has been made by a party to a lawsuit, the objection should be made to the presiding judge in the case in which the motion was made.  The objection should not be made to a *different* judge in a *different* lawsuit.

52.     The application of this commonsense principle is even more compelling where—as here—the lawsuit in which the motion was filed involves a subject matter that one division of our trial courts has been given exclusive jurisdiction over by the General Assembly.

53.     Second, North Carolina's General Statutes expressly authorize a spouse—such as Mrs. Smith—to file a motion for preliminary injunction in an equitable distribution action for the purpose of protecting his or her interests in the marital estate.  Specifically, N.C.G.S. § 50-20(i) states in relevant part as follows:

> Upon filing an action or motion in the cause requesting an equitable distribution or alleging that an equitable distribution will be requested when it is timely to do so, a party may seek injunctive relief . . . to prevent the disappearance, waste, or conversion of property alleged to be marital property, divisible property, or separate property of the party seeking relief.

N.C.G.S. § 50-20(i).

54.     Plainly, this statutory provision gives a spouse in Mrs. Smith's position the right to petition the District Court for an order seeking to preserve the status quo of the couple's marital property and to prevent its disappearance, waste, or conversion during the pendency of the equitable distribution proceeding.

55. When questioned on this subject by the Court at the 28 October hearing, counsel for Plaintiffs conceded that (1) § 50-20(i) empowers the District Court in the ED Action to issue a preliminary injunction if it believes that Mr. Smith is, in fact, improperly concealing, wasting, or converting marital property; and (2) the PI Motion—as a whole—is therefore not improper. Instead, Plaintiffs' counsel clarified that Plaintiffs' position is that only certain specific portions of the relief requested in the PI Motion are improper.

56. Indeed, a review of the PI Motion reveals that it also encompasses other types of potential transactions by Mr. Smith—that is, transactions having nothing to do with his ownership or management of Plaintiffs—that Mrs. Smith contends would result in the diminution of marital assets.

57. Nonetheless, Plaintiffs maintain that the PI Motion is improper to the extent it requests that the District Court:

> [e]nter a preliminary injunction restraining [Mr. Smith] from disposing, transferring, wasting, hiding, converting, selling, pledging, assigning, or in any manner alienating marital or divisible assets, including but not limited to the following:
>
> a. Restraining [Mr. Smith] from assigning, transferring, or selling any assets or interests in business entities to third parties without [Mrs. Smith's] written consent or entry of an order of the Court permitting the same;
>
> b. Prohibiting [Mr. Smith] from refinancing/incurring additional debt associated with any business entity in which [Mr. Smith] has management control without [Mrs. Smith's] written consent or entry of an order of the Court permitting the same;
>
> c. Enjoining [Mr. Smith] from authorizing or proceeding forward with any transactions in excess of one hundred thousand dollars whether individually or associated with

any business entity in which he has management control without [Mrs. Smith's] written consent or entry of an order of the Court permitting the same;

d. Restraining [Mr. Smith] from further encumbering any stock or other assets (or authorizing any business entity to further encumber any assets) without [Mrs. Smith's] written consent or entry of an order of the Court permitting the same;

. . .

f. Ordering [Mr. Smith] to provide an accounting of all distributions he has received from North State Bank and an accounting of all transactions in excess of one hundred thousand dollars that were initiated by [Mr. Smith] individually, or on his behalf, or initiated on behalf of any business entity in which [Mr. Smith] has management control since January 1, 2023.

(Compl. Ex. A, at 8–10.)

58. Although these portions of the PI Motion do not expressly request that the District Court take any action directly against Plaintiffs, Plaintiffs nevertheless contend that the PI Motion would, as worded, effectively give Mrs. Smith veto power over their business operations and interfere with the fiduciary duties and obligations that Mr. Smith owes to them.

59. But Plaintiffs' arguments simply amount to a belief that Mrs. Smith has sought overly broad relief in the PI Motion and that her legitimate interests in protecting the status quo as to the marital estate could be achieved by a more narrowly crafted motion.

60. The District Court is not only fully competent to resolve that issue but has also been granted the exclusive jurisdiction to do so by our General Assembly.

61.     Third, Plaintiffs' contention that their rights cannot be protected in the ED Action because Mr. Smith is the only defendant in that proceeding rings hollow.

62.     As noted above, there is currently a motion by Mrs. Smith to join Plaintiffs as additional parties to the ED Action that is pending in District Court. (*See* ECF No. 20.6.) Nevertheless, Plaintiffs have not consented to that motion—even though becoming parties to that case would enable them to make the same arguments to the District Court judge in the ED Action (who will be the ultimate decisionmaker on Mrs. Smith's PI Motion) that they are making here.

63.     As a result, it is difficult to escape the conclusion that Plaintiffs are trying to have their cake and eat it too by simultaneously (1) attempting to exercise the type of input over the resolution of the PI Motion that only a party to the ED Action would have, while (2) avoiding being subject to the jurisdiction of the District Court, thereby escaping any ensuing disadvantages they believe they would suffer from actually becoming parties to the ED Action.

64.     Fourth, the existing decisions from North Carolina's appellate courts that are most analogous to the present case have uniformly held that a Superior Court judge lacks the authority to interfere with a District Court's resolution of a separately pending equitable distribution action.

65.     In *Hudson v. Hudson*, our Court of Appeals addressed similar jurisdictional arguments in the context of a motion to dismiss for lack of subject matter jurisdiction. 145 N.C. App. 631 (2001).

66.    In that case, Susan Hudson ("Mrs. Hudson") had initiated an equitable distribution proceeding in District Court following her separation from her husband, Fitzgerald Hudson ("Mr. Hudson"). *Id.* at 632. During the equitable distribution proceeding, the District Court determined that Mr. Hudson had an ownership interest in a business entity—Hudson International, Inc. ("HII")—as well as "final direction and control" over HII "in his capacities as general partner and chief executive officer." *Id.* The District Court further found that prior to their separation, Mr. Hudson had used marital assets to build a second residence, known as "Southerly," which he titled to HII as part of a "calculated effort to divest [Mrs. Hudson] of her marital property rights." *Id.* at 632–33. HII subsequently filed a complaint for declaratory relief in Superior Court requesting a declaration that "Southerly" was the sole property of HII and that neither Mrs. Hudson nor Mr. Hudson had an ownership interest in it. *Id.* at 633.

67.    The Court of Appeals affirmed the trial court's dismissal of the Superior Court action under Rule 12(b)(1), framing the issue as "whether section 7A-244 divests the superior court of jurisdiction to enter a declaratory judgment concerning alleged marital property, where a previously filed domestic action concerning that same property is pending in the district court." *Id.* at 635. The Court of Appeals held that because the District Court had determined marital assets were used to purchase "Southerly" and that "Southerly" had been titled to HII for the purpose of depriving Mrs. Hudson of the marital estate, the District Court had obtained

exclusive jurisdiction to determine the nature of—and potentially divide—the property. *Id.* at 636–37.

68.    The Court of Appeals explained its reasoning as follows:

Plaintiffs argue that . . . they were not parties to the [District Court] action when it was filed and therefore are not bound by that action in relation to the declaratory judgment action.  Plaintiffs further argue that section 7A-244 is inapplicable in the present case, because by its plain language, section 7A-244 does not mandate that declaratory judgment actions concerning marital assets must be filed in district court, nor does it prohibit the filing of such actions in superior court. With plaintiffs' arguments, we disagree.

. . .

[W]e conclude that it is irrelevant in the present case whether or not section 7A-244 lists declaratory judgment actions as actions for which the district court is the proper division.  Section 7A-244 instructs litigants that the "proper division" for the specified domestic related actions is the district court.  § 7A-224.  By its plain language, when the actions listed therein are erroneously filed in superior court and no other such action has been previously filed in district court, the superior court may, upon a parties' motion, transfer that action to the proper division— the district court, via section 7A-258 of our General Statutes.  *See* N.C.G.S. § 7A-258 (stating that any party may move to transfer civil actions "to the proper division when the division in which the case is pending is improper" under the rules specified in Chapter 7A).  This is not the situation presented by the present case.

Rather, . . . where, as here, an action listed in section 7A-244 has been previously filed in district court and another action relating to the subject matter of the previously filed action is then filed in superior court, the district court's jurisdiction over the subject matter has already been invoked by the parties to the first action.  It follows that the superior court does not have jurisdiction in the subsequently filed action, irrespective of the parties to the first action.

Because the Superior Court . . . was divested of subject matter jurisdiction in the case *sub judice*, it properly dismissed the action without prejudice.  . . .  We note that dismissal of such actions without prejudice further allows litigants to then intervene in the pending district court action by virtue of Rule 24 of our Rules of Civil Procedure. *See* N.C. R. Civ. P. 24(a).  Because plaintiffs *sub judice* have been made

parties to the [District Court] action, the above noted procedure pursuant to Rule 24 is unnecessary, as other joinder and pleading options are now available to them via our Rules of Civil Procedure.

*Hudson*, 145 N.C. App. at 637–38.

69.     In *Burgess v. Burgess*, the Court of Appeals addressed whether the District Court's exclusive jurisdiction over equitable distribution proceedings encompassed a shareholder derivative action brought by one spouse against the other spouse.  205 N.C. App. at 325.

70.     The wife had brought a lawsuit for equitable distribution against her husband.  *Id.* at 326.  The couple each owned a fifty percent interest in Burgess & Associates, Inc. ("B&A"), and while the husband served as B&A's sole director and president, the wife had requested that the District Court grant her "exclusive possession and full use" of B&A.  *Id.*  While the equitable distribution case was pending, the wife brought a shareholder derivative action on behalf of B&A in Superior Court against the husband requesting (1) an inspection of B&A's records; (2) an accounting; (3) damages for the husband's alleged breach of fiduciary duties; and (4) an order divesting the husband of his shares of B&A.  *Id.*  Relying on *Hudson*, the husband sought to have the shareholder derivative action dismissed for lack of subject matter jurisdiction, but the trial court denied the motion.  *Id.* at 326.

71.     In affirming in part and reversing in part the trial court's ruling, the Court of Appeals explained which claims could and could not be brought in Superior Court while a related equitable distribution claim was pending in District Court.

> Under the broad scope of our equitable distribution statutes, it is clear that [the wife's] equitable claim for divestiture of [the husband's] shares is squarely addressed in her equitable distribution action.  [The wife]

has already invoked the powers of the district court to divide the shares of Burgess & Associates, and [the wife] may not use her shareholder suit as an end-around to obtaining sole ownership of the company. To the extent the trial court allowed [the wife] to pursue an equitable divestiture of [the husband's] shares in her shareholder derivative suit, we reverse the trial court's order.

. . .

By contrast, [the wife's] derivative claim in her shareholder suit does not concern the division of marital property, and instead she asserts a separate claim for relief, outside the scope of section 50-20 and on behalf of the corporation, in superior court. Burgess & Associates is a separate legal entity, recognized as distinct from the holders of its shares, *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627 (1960); and though [the wife] and [the husband] are in the midst of their divorce, the company continues to exist as a corporation owned and managed by its shareholders. This legal principle entitles [the wife] to bring a shareholder derivative suit "in the right of" Burgess & Associates in order to assert the corporation's rights, and recover damages on behalf of the corporation for [the husband's] alleged breaches of the duties of good faith and due care. N.C.G.S. § 55-7-40.1(1). As part of this cause of action, [the wife] is entitled to relief that she is barred from seeking in the equitable distribution action: a jury trial.

*Burgess*, 205 N.C. App. at 330–31.

72. Most recently, in *Baldelli v. Baldelli*, our Court of Appeals held that although the Superior Court possessed subject matter jurisdiction over one spouse's claim for breach of fiduciary duty against the other spouse, such a claim was required to be held in abeyance until a final resolution of equitable distribution proceedings between the parties that were pending in District Court. 249 N.C. App. 603 (2016).

73. In *Baldelli*, the husband and wife had formed a number of business entities throughout their marriage—including Travel Resorts of America, Inc. ("TRA"); Trident Designs, LLC ("Trident Designs"); Travel Resorts of North Carolina, LLC ("TRNC"); Derby Investment Company, LLC ("Derby Investment"); and Trident

Capital, LLC ("Trident Capital"). *Id.* at 604. Subsequently, the husband and wife separated, and each filed an equitable distribution action in District Court. *Id.* The parties agreed that TRA and Trident Designs were marital property and joined them as parties to the equitable distribution proceeding. *Id.* However, although the wife claimed that TRNC, Derby Investment, and Trident Capital were also marital property, the husband disagreed, and those entities were not made parties to the District Court litigation. *Id.* While the equitable distribution action was pending, the wife—individually and on behalf of TRA and Trident Designs—filed a lawsuit in Superior Court against the husband, TRNC, Derby Investment, and Trident Capital asserting several claims, including one for breach of fiduciary duty. *Id.*

74. On appeal, the Court of Appeals concluded that the trial court had erred in dismissing the wife's breach of fiduciary duty claim for lack of subject matter jurisdiction. *Id.* at 605.

> In the case before us, Plaintiffs allege, *inter alia*, breach of fiduciary duty against Defendant for which Plaintiffs claim damages in excess of $25,000.00. If Plaintiffs prevail in this breach of fiduciary duty claim, they will collect from Defendant's separate property, which is a remedy not available to them in the district court equitable distribution action. Although it is possible that the equitable distribution action could resolve the issues underlying Plaintiffs' claim for breach of fiduciary duty, it is also possible that the equitable distribution action will leave these issues unresolved or, as stated above, leave Plaintiffs without the full remedy that would be provided in the superior court action. . . .

> [B]ecause the parties and subject matter of Plaintiffs' breach of fiduciary duty claim are closely related—when not identical—to the parties and the subject matter to be decided in a portion of the district court action, and because there is a clear interrelationship between the issues in both actions, we do not believe it is in the interest of judicial economy or clarity for both of these actions to proceed simultaneously. To allow both actions to proceed concurrently would be to invite conflict between the resolution of interrelated issues in the two actions.

. . .

> We hold that Plaintiffs' breach of fiduciary duty claim in this case should be held in abeyance by the superior court until the district court equitable distribution action is resolved. Concerning Plaintiffs' additional superior court claims, they are similar in that though the underlying issues might be resolved in the equitable distribution action, we cannot say for certain that unresolved issues would not remain.

*Id.* at 607–09.

75.    *Hudson*, *Burgess*, and *Baldelli* are helpful in articulating key principles that apply where a lawsuit is filed in Superior Court that bears a close relationship to an existing equitable distribution proceeding in District Court between the same (or similar) parties. But the Court's lack of subject matter jurisdiction over Plaintiffs' declaratory and injunctive claims in the present case is far more glaring than in any of those cases.

76.    In the present case, Plaintiffs are overtly asking this Court to enter an order expressly telling Mrs. Smith what she can and cannot argue in a statutorily authorized motion that she filed in the ED Action, which is currently pending before the District Court. It is difficult to imagine a more blatant form of interference with the ED Proceeding than that sought by Plaintiffs here.

77.    This is not merely a scenario in which there exists some degree of overlap between the case pending in Superior Court and the case pending in District Court. Rather, this is a situation where the *expressly stated purpose* of the declaratory and injunctive claims asserted in the Superior Court action is to interfere with the District Court's disposition of a motion currently pending before it.

78. The granting of such relief under any circumstances would be unprecedented, but it would be even more extraordinary in a case like this one, where the subject matter of the proceeding before the District Court is one for which the General Assembly has granted that court exclusive jurisdiction.

79. Finally, it is important to emphasize that Plaintiffs have ways to protect their interests that they claim are at risk. Most basically, Plaintiffs can consent to be joined in the ED Action, which would give them a direct right to make the same arguments that they make here to the ultimate decisionmaker on Mrs. Smith's PI Motion—that is, the District Court. *See Hudson*, 145 N.C. App. at 638.

80. Alternatively, they can rely on the commonality of interests between them and Mr. Smith—in avoiding disruption to the loan agreements between Plaintiffs and their lenders—and allow Mr. Smith's counsel in the ED Action to make these same arguments.

81. Moreover, any ruling in the ED Action can be appealed to the Court of Appeals, accompanied by a motion to stay the District Court's order. *See, e.g., Campbell v. Campbell*, 241 N.C. App. 227, 230–31 (2015) (granting interlocutory review of the District Court's entry of a preliminary injunction where "the trial court exerted significant control over [the company's] assets, operations, and management structure in order to effectuate a business plan while [the company] was not a party to the [equitable distribution] action").

82. However, the one thing that Plaintiffs *cannot* do is precisely what they seek to do in the present case—that is, use this Court as a vehicle to gain some degree of control over the proceedings in the ED Action from afar.

83. Accordingly, Mrs. Smith's Motion is **GRANTED** pursuant to Rule 12(b)(1) with respect to Plaintiffs' claims for declaratory and injunctive relief, and those claims are **DISMISSED** without prejudice. *See Holton v. Holton*, 258 N.C. App. 408, 415 (2018) (noting that "a dismissal under Rule 12(b)(1) must be made without prejudice, since a trial court without jurisdiction would lack authority to adjudicate the matter" (cleaned up)).

### B.    Claims for Monetary Damages

84. However, the Court reaches a different conclusion under Rule 12(b)(1) with respect to Plaintiffs' claims for tortious interference with contract and conversion.

85. Although these two claims are factually related to the ED Action, they do not pose the obvious jurisdictional defects discussed above that bar Plaintiffs' declaratory and injunctive claims. Namely, these two claims do not seek to directly interfere with ongoing proceedings in the ED Action or otherwise impinge on the District Court's authority over equitable distribution matters.

86. *Burgess* and its progeny support the conclusion that the District Court's exclusive authority over equitable distribution actions does not preclude Plaintiffs from bringing these types of tort claims against Mrs. Smith in Superior Court seeking (1) monetary damages from her separate (non-marital) property; and (2) a jury trial

(if they desire one). *See Burgess*, 205 N.C. App. at 332 (recognizing that "if successful in prosecuting her derivative suit for breach of the duties of good faith and due care, [plaintiff] may obtain a judgment . . . from a jury verdict" and that such an award "would be against [defendant] in his individual capacity[,]" which could be enforced "against [defendant's] separate property"); *see also Baldelli*, 249 N.C. App. at 607 (noting that "[i]f [p]laintiffs prevail in this breach of fiduciary duty claim, they will collect from [d]efendant's separate property, which is a remedy not available to them in the District Court equitable distribution action"); *see also BIOMILQ, Inc. v. Guiliano*, 2023 NCBC LEXIS 24, at *46 (N.C. Super. Ct. Feb. 10, 2023) (denying a motion to hold the Superior Court case in abeyance because "[plaintiff] would not be entitled to the relief it seeks . . . in the District Court [a]ction" for unfair and deceptive trade practices).

87. Therefore, Mrs. Smith's Motion to Dismiss Plaintiffs' claims for tortious interference with contract and conversion pursuant to Rule 12(b)(1) is **DENIED**.[2]

## II. Rule 12(b)(6)

88. Alternatively, Mrs. Smith seeks dismissal of Plaintiffs' claims for tortious interference with contract and conversion under Rule 12(b)(6).

89. The Court will address Mrs. Smith's arguments as to each of these claims in turn.

---

[2] For the reasons set out below, however, the Court finds that dismissal of Plaintiffs' tort claims is nonetheless proper—albeit pursuant to Rule 12(b)(6) rather than Rule 12(b)(1).

### A. Tortious Interference with Contract

90. Our Supreme Court has articulated the following elements applicable to a tortious interference with contract claim:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (cleaned up).

91. In support of Plaintiffs' claim for tortious interference with contract, the Complaint alleges as follows:

> At all relevant times, [Mrs. Smith] knew that Plaintiff Entities had agreements with lenders that encumbered the Plaintiff Entities and their assets with debt.
>
> [Mrs. Smith's] actions including bringing [Mrs. Smith's] PI Motion have been and are made without justification.
>
> [Mrs. Smith's] actions have been or are imminently preventing performance of the contractual obligations in Plaintiff Entities' lending arrangements.
>
> Plaintiffs have been damaged by the actions of [Mrs. Smith] described in this Complaint in an amount to be proved at trial in excess of $5 million as of the date of this Complaint and such damages are increasing so long as [Mrs. Smith's] PI Motion is pending.

(Compl. ¶¶ 287–290.)

92. The Court finds that Plaintiffs' tortious interference with contract claim fails for several reasons.

93. Perhaps most basically, there are no allegations in the Complaint that Mrs. Smith has engaged in any conduct to actually induce Plaintiffs' lenders to take any adverse action against Plaintiffs with respect to their existing loan agreements.

94. This Court has previously held that "[t]o sufficiently plead inducement, there must be allegations of purposeful conduct, active persuasion, request, or petition." *Se. Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth.*, 2019 NCBC LEXIS 107, at *19 (N.C. Super. Ct. Dec. 13, 2019) (cleaned up).

95. Here, Plaintiffs do not allege that Mrs. Smith has taken any action to directly contact or interact with their lenders. To the contrary, the Complaint alleges that *Plaintiffs* were the ones who alerted their lenders to the existence of Mrs. Smith's PI Motion. The only conduct attributable to Mrs. Smith is that she filed the PI Motion in the ED Action—a motion that, once again, is expressly authorized by N.C.G.S. § 50-20(i).

96. The absence of allegations of specific acts of inducement by Mrs. Smith renders this claim fatally defective. *See, e.g.*, *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at *28 (N.C. Super. Ct. Mar. 21, 2023) (observing that the plaintiff "short shrift[ed] the requirement that it plead that [defendant] intentionally induced [a third party] to breach the [contract]" by alleging intentional inducement "in conclusory fashion" and "[w]ithout supporting facts").

97. Furthermore, Plaintiffs have likewise failed to allege any facts to support the conclusory allegation that Mrs. Smith filed the PI Motion in the ED Action without justification. "A party acts 'without justification' when he acts with malice and his actions are not reasonably related to the protection of a legitimate business interest. . . . To sufficiently allege that a party acted without justification, the complaint must provide a factual basis to support the claim of malice." *Urquhart*

*v. Trenkelbach*, 2017 NCBC LEXIS 12, *15–16 (N.C. Super. Ct. Feb. 8, 2017) (cleaned up).

98. Here, the Complaint is devoid of any allegations that Mrs. Smith was even aware that filing the PI Motion might have an adverse effect on Plaintiffs' lending agreements before she filed it. Without such knowledge, it is unclear how Mrs. Smith could have filed the PI Motion for the purpose of inducing Plaintiffs' lenders to take any action regarding those agreements. *See Wells Fargo Ins. Servs. USA, Inc. v. Link*, 2018 NCBC LEXIS 42, at *44 (N.C. Super. Ct. May 8, 2018) (dismissing a claim where plaintiff alleged that the defendant "acted 'without justification,' but d[id] not plead facts supporting a claim that [defendant] acted with malice or for any improper purpose, nor that [defendant] was motivated by anything other than an interest in successfully competing against [plaintiff]" (cleaned up)), *aff'd per curiam*, 372 N.C. 261, 285 (2019) *see also Lendingtree, LLC v. Intercontinental Cap. Grp., Inc.*, 2017 NCBC LEXIS 54, at *14 (N.C. Super. Ct. June 23, 2017) (holding that "general allegations of malice are insufficient as a matter of pleading" (cleaned up)).

99. The Court further notes that Plaintiffs have not cited any cases from our appellate courts that have allowed a claim for tortious interference with contract to survive based on allegations even remotely similar to those pled here.

100. Finally, as counsel for Mrs. Smith noted at the 28 October hearing, allowing such a claim to go forward would raise troubling public policy implications.

Parties to an equitable distribution proceeding should not face the specter of tort liability simply by filing a motion authorized under N.C.G.S. § 50-20(i).

101. Although motions brought pursuant to § 50-20(i) must, of course, be made in good faith and in compliance with Rule 11 of the North Carolina Rules of Civil Procedure, policy concerns would be implicated if a spouse filing such a motion was placed at risk of liability in tort any time the District Court ultimately denied the motion in whole or in part. *See Found. Bldg. Materials, LLC v. Conking & Calbrese, Co.*, 2024 NCBC LEXIS 40, at *16 (N.C. Super. Ct. Mar. 4, 2024) (noting that public policy requires that "a party who seeks redress by filing a lawsuit [be] immune from claims that are based solely on the pursuit of that lawsuit" (cleaned up)).

102. Therefore, for all of these reasons, Mrs. Smith's Motion to Dismiss is **GRANTED** as to Plaintiffs' claim for tortious interference with contract pursuant to Rule 12(b)(6), and that claim is **DISMISSED** with prejudice.

**B.    Conversion**

103. Plaintiffs' conversion claim fares no better.

104. "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (cleaned up).

105. In support of Plaintiffs' conversion claim, the Complaint alleges as follows:

> [Mrs. Smith's] actions including bringing [Mrs. Smith's] PI Motion constitute an actual and imminent unauthorized assumption and exercise of right of ownership over Plaintiff Entities and their property.
>
> [Mrs. Smith's] actions including bringing [Mrs. Smith's] PI Motion have deprived and are wrongly depriving Plaintiff Entities of their property.
>
> Plaintiffs have been damaged by the actions of [Mrs. Smith] described in this Complaint in an amount to be proved at trial in excess of $5 million as of the date of this Complaint and such damages are increasing so long as [Mrs. Smith's] PI Motion is pending.

(Compl. ¶¶ 293–295.)

106. These allegations are insufficient for several reasons.

107. Most basically, Plaintiffs have not alleged that Mrs. Smith has actually acquired ownership over—or possession of—any property belonging to Plaintiffs.

108. Indeed, as counsel for Plaintiffs essentially conceded at the 28 October hearing, the facts of this case do not fit within the bounds of North Carolina's existing case law on conversion.

109. Moreover, to the extent that the conversion claim is based on Mrs. Smith's alleged assumption of ownership and management interests in Plaintiffs, those interests are intangible and cannot be the subject of a conversion claim. *See McFee v. Presley*, 2022 NCBC LEXIS 74, at *13–14 (N.C. Super. Ct. July 11, 2022) (dismissing conversion claim because "[m]embership in an LLC is [ ] an intangible interest" and "North Carolina does not recognize a claim for conversion of intangible interests" (cleaned up)); *Tiller v. Phillips*, 2025 NCBC LEXIS 141, at *54, *56 (N.C. Super. Ct. Oct. 15, 2025) (holding that "ownership and control over [membership] interests in" a business are "intangible and not subject to a conversion claim" absent

allegations that "a membership certificate or other tangible manifestation of the membership interest was taken" (cleaned up)).

110.    For these reasons, Mrs. Smith's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to Plaintiffs' claim for conversion, and this claim is **DISMISSED** with prejudice.

### III.    Plaintiffs' Second Amended Motion for Preliminary Injunction

111.    As noted above, since the Motion to Dismiss was filed, Plaintiffs have filed a Second Amended Motion for Preliminary Injunction in the present case.

112.    However, because the Court's rulings herein dismiss this lawsuit in its entirety, Plaintiffs' request for a preliminary injunction is moot. *See N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs*, 2016 NCBC LEXIS 33, at *9 n.2 (N.C. Super. Ct. Apr. 26, 2016) (concluding that "[t]he Court's ruling on [d]efendants' [m]otions . . . dismissing [p]laintiff's claims renders" plaintiff's motion for a preliminary injunction moot (cleaned up)); *see also State ex rel. Edmisten v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357–58 (1980) (holding that a preliminary injunction "lasts no longer than the pendency of the action" (cleaned up)).

113.    Accordingly, Plaintiffs' Second Amended Motion for Preliminary Injunction is **DISMISSED** as **MOOT**.

## CONCLUSION

**THEREFORE, IT IS ORDERED** as follows:

1.    Mrs. Smith's Motion to Dismiss pursuant to Rule 12(b)(1) is **GRANTED** as to Plaintiffs' claims for declaratory and injunctive relief (Claims 1, 2, and 3), and those claims are **DISMISSED** without prejudice;

2.    Mrs. Smith's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED** as to Plaintiffs' claims for tortious interference with contract and conversion (Claims 4 and 5), and those claims are **DISMISSED** with prejudice; and

3.    Plaintiffs' Second Amended Motion for Preliminary Injunction is **DISMISSED** as **MOOT**.

**SO ORDERED**, this the 14th day of November 2025.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases